51   *WILLOUGHBY JOURDAN, guardian, plaintiff in error, v.
     LEWIS B. MILLER, executor, defendant in error.*

(Atlanta, June Term, 1870.)

CONSTRUCTION OF WILL†—ELECTION—BILL FOR DI-
RECTION.—A testator, by his will, directed that "his son J. should
take as a part of his portion, the negro man Peter, who is now in his
possession, at $1,200 00, and my negro boy Green at valuation, and
that he take, at his choice, lot of land number one hundred and sev-
enty-nine, at $1,000 00, or lots of land numbers one hundred and
seventy-nine, one hundred and seventy-eight, one hundred and sixty-
five, and one hundred and sixty-six, at a fair valuation, said lots
lying in the fifth district of Randolph county;" and the son died,
leaving M., an infant daughter, his only legal representative. The
four lots of land were appraised to be worth $2,400 00. The guard-
ian of M., the infant child, with the assent of the executor of the
testator, elected to take the four lots of land at the appraised value
and went into the possession thereof in her right, and is now in
possession of the same. The executor filed a bill for direction, al-
leging that the words of the before recited clause of the testator's
will, and the directions contained therein, are so confused and un-
intelligible, as to render a construction or safe execution thereof im-
possible by him as executor.

Held, That neither the allegations in the complainant's bill, nor
the evidence contained in the record, makes such a case as entitles
the executor to interfere with the rights and interests of M., the

See concurring opinion of McCay, J., post, 438.

*LEGAL EFFECT OF DECISION—NEW TRIAL—MOTION
TO SHOW CAUSE.—See the same case in 43 Ga. 316, where it is
said: "Upon examination of the original judgment of this court, ren-
dered at the June term, 1870, in the case of Jourdan v. Miller, 41 Ga.
51, 438, we are of opinion that the legal effect of such decision was to
have granted a new trial in the case, and the court below erred in
entertaining the motion calling upon the parties to show cause why
the decision should not be made a part of the decree of the court
under the facts stated. It was proper to have made the judgment of
the supreme court reversing the judgment of the court below, the
judgment of that court, and it was operative and final, as far as the
decision went, in its adjudication of the question embraced therein.
But as to questions of fact, originating in the evidence on the new
trial granted by such reversal, and which may have appeared upon
the trial, it was not in its terms, nor by its legal operation a finality
to the litigation, and we hold, the legal effect of the judgment,
granting a new trial, ought not to have anticipated a trial, upon the
merits, by motion to make it final, under the facts in this case. And
we, therefore, reverse the court in its judgment refusing to set aside
such order, as it gave to the judgment of this court an effect not
contemplated by the decision."

†CONSTRUCTION OF WILLS—SPECIFIC AND GENERAL
LEGACY—ABATEMENT—ADVANCEMENT.—See the same case
reported in 47 Ga. 346. In that case Warner, C. J., dissenting, said:
"When this case was before this court at a former term, at the in-
stance of the executor, the court gave a construction to this clause
of the will, and held, that if the guardian of Missouri P. (Miller)
elected to take the four lots of land at the appraised value thereof,
and went into possession of the same with the assent of the execu-
tor, he is entitled to hold the same as the property of his ward,
under the will, without abatement, so far as the executor is con-
cerned. See Jourdan v. Miller, 41 Ga. 51."

infant ward, in the four lots of land which she, by her guardian, elected to take under the will, at a fair valuation, and did take with the assent of the executor.

Construction of Will. Election, etc. Before Judge Harrell. Randolph Superior Court. November Term, 1869.

Wiley Miller, on the 19th of November, 1863, made his last will, containing the following items: 1st, providing for the payment of his debts; 2d, after paying debts, the balance, real and personal, was to be divided by the executor, or persons appointed by the Ordinary, into nine equal shares; each child or representative of a child should take one of said shares, subject to the refunding or drawbacks herein stated; the remaining ninth was to be divided equally between his three youngest daughters, his sons, Lewis B. and Iverson G., and the children of Ferna J. Miller, deceased. The shares of the daughters were not to be subject to their respective husband's debts, but theirs solely, during their respective lives, and to go to their respective heirs at their *deaths, respectively; 3d, Elizabeth Baldwin's (his oldest daughter,) share is subject to a deduction of $3,000 00, or she should refund that sum which he had given her in slaves then in her possession; 4th, his daughter Epsey B. Ryal's share was to be charged with $1,300 00 for slaves advanced to her and then in her possession, and she was to "take at a fair valuation, nine slaves therein named," and should they "at a fair valuation or appraisement," amount to more than her just portion or share, she should refund the excess; 5th, Lewis B's share was subject to a deduction of $3,000 00 because of land and a slave advanced to him. He was to take a named slave at a fair valuation, and another named slave without accounting for this one. The 6th item was as follows: "I will and direct that my son, Iverson G. Miller, take, as part of his portion, the negro man Peter, whom he now has in his possession, at $1,200 00, and my negro boy Green, at a fair valuation, and that he take, at his choice, lot of land number one hundred and seventy-nine, at $1,000 00, or lots of land numbers one hundred and seventy-nine, one hundred and seventy-eight, one hundred and sixty-five, one hundred and sixty-six, at a fair valuation, all of said lots being in the fifth district of the aforesaid county of Randolph." Item 7th charges the share of the children of Ferna J. Miller with $1,235 00, because of a slave given to their father, and certain debts owed by him to testator, and gave to them certain lands therein specified at $4,000 00. Their share was to be for the use of themselves and their mother during her life and widowhood, but not subject to her debts. If she married, she was to have a child's part till her death, and then the children were to take all. Item 8th gave his daughter, Missouri Ann Sharmon, two named slaves at $2,000 00, and directed that $1,200 00 be taken from her

Jourdan v. Miller

share and be given to her son, and held by the executor for said son. 9th. Martha Caxwell, his daughter, was to take the named slaves heretofore given to her, ·at $2,200 00, "as part of her share." 10th. Mary Miller, his daughter, was to take two slaves named, at $2,000 00, as part *of her share. Item 11th gave his executors the right to sell or keep, as they pleased, the balance of his land, as might be best for all of his heirs. Item 12th provided that his three daughters, Mrs. Sharmon, Mrs. Caxwell and Mary Miller, should take their shares in money, land and slaves, or either, at their option. Item 13th gave a named slave to Lewis B's children "at a fair valuation" as a part of their portion. Item 14th gave to Mrs. Sharmon and Mary Miller, certain furniture, to equalize them with the others, and for this they were not to account. Item 15th provided that his undevised slaves should "be appraised and divided amongst (his) my children, according to the terms of this my (his) last will and testament," and that all his "other personalty be sold by his executors according to law for general distribution." Item 16th changed item 2d by providing that Mrs. Sharmon should have in value $800 00 more of said ninth share than any of the other heirs, that Mrs. Caxwell have $500 00 more of it than any of the others, except Mrs. Sharmon, and Mary Miller $1,200 00 of it more than any other except Mrs. Sharmon and Mrs. Caxwell, and that the remainder of said ninth should be then divided amongst the others named in said 2d item equally. The 17th and last item appointed Lewis B. Miller and Moses H. Baldwin as his executors.

Testator died, and on the 5th of September, 1865, Lewis B. Miller was qualified as executor of said will, then duly probated. He filed this bill against all of said legatees (and the husbands of the married females of them,) except Iverson G. Miller. He died before testator died and left no heir, except Missouri P. Miller, and she being a minor, her guardian, Willoughby Jourdan, was made a party defendant in said bill. It averred that testator's estate consisted mainly of land and slaves, that he died in January or February, 1865, before slavery was abolished, that by reason of emancipation, difficulties are in the way of understanding and carrying out the 2nd, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 11th, 12th, 13th, 16th items of ·said will, saying, especially, that the 6th item was so confused and unintelligible as to render a construction or safe execution of it by him impossible. None of *the slaves went into the actual possession of the legatees. The scheme of said will was to divide his estate equally; emancipation so far defeated that object that if the will be executed as to the balance of his estate, the division will be very unequal. He prayed for direction, "that a fair, just and equitable construction of said will be had, and that such decree be had, and such instruction be

given, as will protect him in distributing said property" and for general relief.

Moses Baldwin's answer sets up that said will was made when Confederate currency was the only circulating medium in said country, that testator intended said sums to be paid in that currency, and it stated the value of such currency at the dates material in the premises, and that he tendered to the executor said slaves, given to his wife, and that before emancipation, and ought not to pay the $3,000 00. Jourdan, as guardian of Missouri Miller, insisted upon her rights under the letter of said will, notwithstanding emancipation, and set up that, as her guardian he had elected to take said four lots of land given to Iverson G. Miller, and the executor assented thereto and put him in possession thereof, that said lots were subsequently valued at $2,400 00 which sum plus the $1,200 00 for Peter, and a fair valuation for Green, should be counted against her, and he be decreed said land as her guardian, and that he have his share of the balance, if any there shall be.

The other defendants did not formally answer the bill, but appeared by counsel and took part in the trial. There being no controversy as to the genuineness of the will, nor as to the persons who were entitled to take under it, no evidence was offered except the answers, and certain evidence offered by said Jourdan. He introduced as evidence the records from the Court of Ordinary of said county. They showed that the four lots of land mentioned in the 6th item of said will were valued by the appraisers, appointed by the Ordinary, at $2,600 00. He showed by a witness, that soon after he was qualified as such guardian, in 1865, he took possession of said four lots, and had ever since been in possession of them, and by another witness that he applied in 1865 to said executor to rent said *four lots, and that he declined renting them and referred him to said guardian. Jourdan himself testified that soon after the appraisement of testator's lands, he informed the executor that he, as such guardian, would take said four lots, at said valuation, the executor consented thereto, and he then took possession of them and has held possession ever since; that afterwards the executor said something about the rent of the place and Jourdan gave him some paper about the rent, but its contents he did not recollect.

Here the evidence closed, and the cause was argued. Jourdan's counsel requested the Court to charge the jury, 1st. that Missouri P. Miller was entitled to such part of the estate as her deceased father would have taken if alive; 2nd, that she was entitled, through her guardian, to the same privilege of election which her father would have had; 3d, that if the evidence showed that Jourdan, as her guardian, did elect to take the four lots of land mentioned in said 6th item of the will, at the valuation affixed by the appraisers of

the estate, approved by the Ordinary, and the executor assented to said legacy, the title to said four lots passed to said Missouri P., absolutely, as against all persons, except testator's creditors, and the jury should so find and decree; and 4th, that she was entitled to her share of the residuum, as provided by the will.

The 1st, 2nd and 4th requests he gave in charge, but he declined to charge the 3d request. He instructed the jury to charge each legatee with the value of his or her advancement, as fixed by said will, treating dollars at par, and distribute the estate, as provided by the will. The jury found that all the real estate should be sold by the executor, except those mentioned in said 6th item, and two others specifically devised to Ferna J. Miller's children, that commissioners, to be appointed by the Ordinary, should value said four lots, mentioned in the 6th item, at a fair valuation. That the personalty be sold by the executor; that out of all assets in hand the executor pay the expenses of this litigation, and furnish the furniture devised to Mrs. Sharmon and Mary Miller. To the amount of the proceeds of said sales, after *paying for said furniture, he was to add the valuation of said excepted land in item 6th, and $4,000 00 as the value of the other excepted lands, and then the commissioners should divide this aggregate amount by nine and distribute it as directed by the will, making the drawbacks therein specified (the decree giving specific instructions as to each share.) As to Missouri P., they decreed that one of said ninths, after deducting $1,200 00, should be assigned to her, and that her guardian "can elect to take lot number one hundred and seventy-nine, at $1,000 00, as part of the share; if it amounts to more than her share she shall refund her overplus to the commissioners; if it amounts to $1,200 00, or more, she retains the $1,200 00 which she took under the will, and the overplus, if any, to be paid to her by the commissioners, and the $1,200 00 should be set aside to be disposed of in a different way, i. e., after each specific legacy was paid, the residuum was to be equally divided, charging each with the advancements aforesaid; said Missouri P. taking no more till the other legatees had received each $1,200 00. The decree was according to said finding.

Jourdan only excepted. His counsel say the Court and jury erred in requiring said four lots in item 6th to be sold as part of the estate, to be appraised now, and in confining her to a choice of but one of said lots at a valuation, that the Court erred in refusing said third request to charge, and in holding that title to said four lots did not vest in her under the facts proven.

H. Fielder, for plaintiff in error.

C. B. Wooten, by W. D. Kiddoo, E. H. Platt, E. L. Douglass, for defendant.

WARNER, J.

This is a bill filed by the executor of Wiley Miller for direction. The following facts were disclosed on the trial: The testator died in 1865, leaving a will, one clause of which is in the following words: "I will and direct that my son, Iverson G. Miller, take, as a part of his portion, the negro *man Peter, who is now in his possession, at $1,200 00, and my negro boy Green, at valuation; and that he take, at his choice, lot of land number one hundred and seventy-nine, at $1,000 00, or lots of land numbers one hundred and seventy-nine, one hundred and seventy-eight, one hundred and sixty-five, and one hundred and sixty-six, at a fair valuation, said lots lying in the fifth district of Randolph county." Iverson G. Miller, the devisee named in the will, is dead, leaving Missouri P. Miller, his infant child, his only legal representative. The four lots of land mentioned above were appraised by the appraisers appointed by the Ordinary, to be worth $2,400 00. The guardian of Missouri P., the infant child, with the assent of the executor, elected to take the four lots of land at the appraised value thereof, and went into the possession thereof in her right, and is now in the possession of the same. The allegation made in the complainant's bill, in relation to the execution of this clause in the testator's will is, "that the words and directions contained therein are so confused and unintelligible, as to render a construction or safe execution impossible by your orator as executor." The decree of the Court in relation to the rights of Missouri P. under this clause of the testator's will. was, that the commissioners appointed to divide the testator's estate among the legatees named in the will, "shall, after deducting $1,200 00, assign to her one share of said estate, (there being nine shares,) who can elect to take lot number one hundred and seventy-nine, at $1,000 00, as part of her said share; if said land amounts to over the share, she shall refund the surplus to the commissioners; if it amounts to $1.200 00 or more, she retains the $1,200 00 she has received under said will, and the overplus, if any, is to be paid to her by said commissioners, and the $1,200 00 of the share shall be set aside by the commissioners, to be hereinafter disposed of, or provided for."

. The decree further declared "that the minor child of Iverson G. Miller shall receive nothing until the other childrens' shares amount to $1,200 00 each." This decree of the Court below. in relation to the rights of the infant child of *Iverson G. Miller, under the testator's will, as we understand it, is error, there being no evidence in the record that the negro man Peter was an advancement made by the testator to Iverson G. in his lifetime. Whether he was in his possession as his own property, or as the property of the testator, does not appear from the evidence in the record. As the guardian of the infant child, Missouri P.,

elected to take the four lots of land at the appraised value thereof, and went into the possession of the same with the assent of the executor, he is entitled to hold the same as the property of his ward under the will without abatement, so far as the executor is concerned, under the allegations in the bill, and the evidence contained in the record. In other words, neither the written allegation, in the complainants' bill nor the evidence in the record, make such a case as entitles the executor to interfere with the rights and interests of the infant ward, Missouri P., in the four lots of land which she, by her guardian, elected to take under the will at a fair valuation, and did take with the assent of the executor. Let the judgment of the Court below be reversed.